IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JEREMY WAYNE GLADDEN PLAINTIFF

v. Civil No. 2:24-cv-02110-TLB-MEF

CAPTAIN MICHAEL HUBER; and
INVESTIGATOR DEREK ROGERS (both
of Johnson County, Arkansas) DEFENDANTS

and

JEREMY WAYNE GLADDEN PLAINTIFF

v. Civil No. 2:24-cv-02089-TLB-MEF

SHERIFF DEPUTY JASON COLE;
SHERIFF TIM HUGHES; and SHERIFF
DEPUTY JOSHUA HEIDELBERG (all of
Johnson County, Arkansas) DEFENDANTS

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

These are two consolidated civil rights actions filed pursuant to 42 U.S.C. § 1983, brought by Plaintiff Jeremy Wayne Gladden. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, Chief United States District Judge, referred these cases to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are the Motion for Summary Judgment (ECF No. 50) filed jointly in the lead case (Case No. 2:24-cv-02110) by all remaining Defendants from both matters, along with a Brief in Support (ECF No. 51) and Statement of Indisputable Material Facts in Support (ECF No. 52); and Plaintiff's Response in Opposition (ECF No. 57). For the reasons given below, the undersigned recommends

that Defendants' Motion be GRANTED, and that Plaintiff's claims against them in both cases be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Plaintiff filed two separate lawsuits in this Court regarding the same set of events: Case No. 2:24-cv-02089, and Case No. 2:24-cv-02110, which have been consolidated. There are five Defendants remaining in those two cases. Plaintiff alleges that in January 2024, he was arrested without a warrant or probable cause, and that excessive force was used against him during this arrest. *See* Case No. 2:24-cv-02089, ECF No. 16, pp. 4–5. He further alleges that he was denied medical care for injuries he suffered during that arrest, and that he was subsequently forced to submit to interrogation without a lawyer present. *See* Case No. 2:24-cv-02110, ECF No. 8, pp. 4–5. He has brought these claims against the Defendants in both their individual and official capacities. All five Defendants have jointly filed a Motion for Summary Judgment, seeking dismissal with prejudice of all remaining claims against them from both cases. The Motion has been fully briefed and is ripe for decision.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

Section 1983 was enacted to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). To assert a claim under § 1983, a plaintiff must allege two elements: (1) that the action occurred under color of law; and (2) that the action is a deprivation of a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). As noted in Section I above, Plaintiff's pleadings allege the Defendants violated four separate constitutional rights of his: (1) false arrest; (2) excessive force; (3) denial of medical care; and (4) interrogation without a lawyer. The Defendants contend they are entitled to summary judgment on all these claims, in both their individual and official capacities.

With respect to the individual-capacity claims, the Defendants argue that they are entitled to qualified immunity. The qualified immunity inquiry consists of two questions: "(1) whether the facts alleged or shown . . . establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of" the time of the relevant conduct "such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583

F.3d 557, 564 (8th Cir. 2009). The Court can answer the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). A § 1983 plaintiff may defeat qualified immunity only if the answer to both questions is yes. *Krout*, 583 F.3d at 564.

**A. Plaintiff's Claim for False Arrest**

Plaintiff contends he was arrested without probable cause and without an arrest warrant. Defendant Joshua Heidelberg was a Detective with the Johnson County Sheriff's Office in January 2024. *See* ECF No. 52-2, ¶ 1. He has testified in an affidavit that on January 25, 2024, he and Defendant Michael Huber (a Captain in the Johnson County Sheriff's Office) spoke on speakerphone with a Lt. Waggonner from the Angeline County, Texas Sheriff's Department. *See id.* at ¶ 2. During this conversation, Lt. Waggonner informed them that Plaintiff was a suspect in a Texas homicide case, and he was suspected of being at his father's house in Arkansas, and in possession of the homicide victim's stolen vehicle. *See id.* Defendant Jason Cole was a Detective with the Johnson County Sheriff's office in January 2024, and he is the officer who ultimately arrested Plaintiff later that night. *See* ECF No. 52-1, ¶¶ 1, 6. Cole and Heidelberg have both testified that Heidelberg informed Cole that same day of what Lt. Waggonner had told them, and that Cole then advised that he had recently seen the allegedly stolen vehicle and Plaintiff at the residence. *See* ECF No. 52-2, ¶ 3; ECF No. 52-1, ¶¶ 2–3. At 4:51 p.m. that same day, Huber swore out an affidavit for a search warrant before Judge James Dunham, who signed a search warrant at that same time, authorizing a search of that residence for various specified "items used in the theft of property, theft by receiving and homicide." *See* ECF No. 52-3, pp. 17–21. Half an hour later, Cole, Heidelberg, Huber, Defendant Derek Rogers, and several other officers executed the search warrant and seized the allegedly stolen truck. *See id.* at 22–23. They began searching for Plaintiff, who Cole eventually encountered and arrested at some point after midnight. *See* ECF No. 52-1, ¶¶ 5–6.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (internal quotation marks omitted). "The existence of probable cause depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*." *Brown v. City of St. Louis, Missouri*, 40 F.4th 895, 900 (8th Cir. 2022) (emphasis in original) (internal quotation marks omitted). "Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense." *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017). "Arguable probable cause exists even when an officer mistakenly arrests a suspect believing the arrest is based in probable cause if the mistake is objectively reasonable." *Id.* (internal quotation marks and alterations omitted).

Here, at the time he arrested Plaintiff, Cole and each Defendant involved in the arrest[1] knew that a judge had already issued a search warrant finding that probable cause existed to believe the offense of theft of a homicide victim's truck by receiving had been committed; they knew that Plaintiff was a suspect in that homicide investigation; and they knew that Cole had already seen Plaintiff in the presence of that truck on the property where that search warrant was to be executed. It was objectively reasonable for them to believe, in light of all this, that Plaintiff was in unlawful

[1] Defendant Sheriff Tim Hughes was present for the initial search but was not present at Plaintiff's subsequent arrest. *See* ECF No. 52-3, ¶ 3. Plaintiff explained in his deposition that he is nevertheless suing Hughes "for arrest with no warrant" because "I don't think those deputies had . . . their own approval to just . . . arrest me in the middle of the night without the sheriff's involvement." *See* ECF No. 52-4, p. 66. However, Plaintiff has not provided evidence of any specific facts showing that Hughes was involved in his arrest, nor what that involvement would have consisted of, other than the general fact that as Sheriff of Johnson County, Hughes had supervisory responsibility over the other Defendants. But general supervisory responsibility, absent personal involvement, is not a sufficient basis for personal liability to attach. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). To whatever extent Plaintiff is attempting to bring an official-capacity claim against Hughes, that is addressed in Subsection III.E, below.

possession of that truck; therefore, they had probable cause to arrest Plaintiff for that offense, and they are accordingly entitled to qualified immunity from that claim.

**B. Plaintiff's Claim for Excessive Force**

Regarding Plaintiff's claim for excessive force, the Plaintiff clarified in his deposition that he is bringing this claim only against Defendant Cole. *See* ECF No. 52-4, p. 53. The Fourth Amendment to the United States Constitution guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." Thus, when a plaintiff brings a claim under the Fourth Amendment that a police officer used excessive force against him during an arrest, an inevitably critical issue is whether the force used was "unreasonable" within the meaning of the Fourth Amendment. In assessing the reasonableness of an officer's use of force, courts must conduct "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The United States Supreme Court has emphasized that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The proper application of this test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Plaintiff testified in his deposition about how his arrest occurred. Plaintiff was walking along the highway back to his father's residence from a friend's house in the middle of the night,

because his father told him over the phone that the police were gone. *See* ECF No. 52-4, p. 17. Plaintiff also told his father over the phone where he was and to come pick him up. *See id.* Soon afterwards his father drove up in his grandmother's car; Cole jumped out of the back seat and said to Plaintiff: "Sheriff's Office. You're under arrest." *See id.* at 17, 31. Plaintiff asked why, and Cole told him the reason was that he stole a truck in Texas. *See id.* at 17–18. At some point during this interaction, Plaintiff claims that while he was trying to retrieve his phone which had fallen, Cole told him to "stop resisting." *See id.* at 18. According to Plaintiff, Cole pointed his gun at Plaintiff and threatened to shoot him. *See id.* at 19. Plaintiff claims he responded, "Don't shoot. I'm unarmed" and took a few steps backwards, but lost his footing, at which point Cole tackled him "and we went down and rolled around in the mud a little bit." *See id.* Plaintiff testified that he did not experience any physical pain from the incident until later that night at the jail. *See id.* at 25.

Six months later, Plaintiff's appendix burst and had to be surgically removed. *See id.* at 7. Plaintiff speculates that when Cole tackled him, he landed on a rock that punctured his internal organs, and that this injury eventually caused his appendix to burst half a year later. *See id.* at 7, 19. Plaintiff testified that Cole never punched or kicked him, and that his only use of force during this interaction was the tackle. *See id.* at 22.

There is no video recording of this use of force; however, another officer arrived shortly afterwards, and that officer's body camera recorded nearly three minutes of him helping the other officers search Plaintiff and then escort him into a car. *See* ECF No. 54. Throughout this recorded interaction all parties, including Plaintiff, are behaving calmly, and Plaintiff does not appear to be experiencing any physical pain or discomfort. *See id.*

Even assuming that Plaintiff's deposition account of this incident is true and accurate, it is indisputable that Cole's use of force in arresting Plaintiff was not unreasonable under those

circumstances. The Eighth Circuit has expressly held that it is not unreasonable for an officer to tackle or execute a takedown of an arrestee who "at least appear[s]" to be resisting by not complying with orders or warnings. *See Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017). Even accepting the implication in Plaintiff's testimony that he was not attempting to flee, but that rather he simply lost his footing while backing away, "an arrestee's subjective motive does not bear on how reasonable officers would have interpreted his behavior." *Id.* Here, all three factors mentioned in *Graham* above point to the reasonableness of Cole's use of force. He understood Plaintiff to be a suspect in a homicide investigation—which of course concerns an extremely serious and dangerous crime—and Plaintiff was moving away from him despite having been told he was under arrest and having been warned to stop resisting. It would be perfectly reasonable for an officer in Cole's position at that moment to conclude that Plaintiff posed a potential threat to the safety of himself and others and that it was necessary to physically subdue him to effectuate the arrest. Therefore, Cole is entitled to qualified immunity from Plaintiff's claim for excessive force.

### C. Plaintiff's Claim for Denial of Medical Care

Plaintiff also alleges that Defendants violated his constitutional rights by denying or delaying him access to medical care for the injuries he alleges he suffered when he was tackled. The Eighth Amendment governs prisoners' claims of deliberate indifference to medical needs generally, but the Fourteenth Amendment governs such claims when they are brought by pretrial detainees. *See Perry v. Adams*, 993, F.3d 584, 587 (8th Cir. 2021). However, the same analytical standard applies to such claims regardless of which Amendment is properly invoked. *See Barton v. Taber*, 908 F.3d 1119, 1123–24 (8th Cir. 2018). To establish a constitutional violation based on deliberate indifference, a plaintiff must show that he suffered from an objectively serious medical need and that the defendant had actual knowledge of that need but deliberately disregarded

it. *Barton*, 908 F.3d at 1124. "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence in diagnosis or treatment does not rise to the level of an Eighth Amendment violation, nor does an inmate's mere disagreement with the course of his medical treatment. *See id.*

Here, Plaintiff's medical claim fails for the simple reason that there is no evidence any of these Defendants were ever aware or should have been aware of his alleged injuries. As already noted above, Plaintiff conceded during his deposition that he did not experience any physical pain from the tackle during his arrest and transport to the jail, and the video recording of his arrest shows him not to be exhibiting any sign of physical discomfort. Plaintiff also conceded during his deposition that he never requested medical attention from any of the Defendants in this case, but that rather "about three days" after his arrest, while he was in jail, he submitted a request for medical attention through that institution's kiosk. *See* ECF No. 52-4, pp. 25–27, 54. In fact, Plaintiff clarified during his deposition that he never intended to claim that he was denied medical care at the scene of his arrest, but rather that he was later denied medical care at the jail. *See id.* at 54–55. But Plaintiff has not sued any employees of the jail. Since the undisputed evidence shows that the Defendants he *has* sued had no knowledge or reason to know of his alleged injuries, they were not deliberately indifferent to his medical needs and did not violate his constitutional rights on this point. Accordingly, they are entitled to qualified immunity from this claim as well.

### D. Plaintiff's Claim for Interrogation Without a Lawyer

Plaintiff's final claim is that he was interrogated at the jail without having an attorney present. The Fifth Amendment provides the right to counsel during custodial interrogations. *See*

*Edwards v. Arizona*, 451 U.S. 477, 482 (1981). "If the accused indicates that he wishes to remain silent, 'the interrogation must cease.' If he requests counsel, the 'interrogation must cease until an attorney is present.'" *Id.* This claim fails for essentially the same reason Plaintiff's medical claim fails: he clarified in his deposition that none of the Defendants he has sued conducted the interrogation of which he complains. *See* ECF No. 52-4, pp. 36–38. Rather, the interrogation was conducted by several investigators from Texas, two to three days after Plaintiff was arrested. *See id.* In other words, the undisputed evidence is that none of the Defendants Plaintiff has sued here violated his constitutional right to counsel during custodial interrogation. Therefore, they are all entitled to qualified immunity from this claim.

**E. Plaintiff's Official-Capacity Claims**

To summarize the foregoing discussion: the undisputed evidence in this matter shows that none of the Defendants here violated any of Plaintiff's constitutional rights. As explained above, this means they are entitled to qualified immunity from his claims against them for individual liability. This also means his official-capacity claims against them must be dismissed. Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). It is possible for a governmental entity to be liable under section 1983 for a constitutional violation even when no government official is found personally liable, when the constitutional violation in question is caused by a "policy" or "custom" of that governmental entity. *See Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). However, there must still have been a constitutional violation for official-capacity liability to attach. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The United States Supreme Court has held that damages cannot be awarded "against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *See id.* Here, the undersigned recommends finding as a matter of law that

these officers inflicted no constitutional harm; accordingly, they are entitled to summary judgment on Plaintiff's official-capacity claims as well.

## IV. CONCLUSION

Accordingly, it is RECOMMENDED that Defendant Michael Huber's, Derek Rogers's, Jason Cole's, Tim Hughes's, and Joshua Heidelberg's Motion for Summary Judgment (ECF No. 50) in Case No. 2:24-cv-02110 be GRANTED, and that Plaintiff Jeremy Wayne Gladden's Amended Complaint (ECF No. 8) in Case No. 2:24-cv-02110 and Second Amended Complaint (ECF No. 16) in Case No. 2:24-cv-02089 both be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of July 2026.

/s/ Mark E. Ford

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE